UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
SOUND UNITED, LLC, and                              )
POLK AUDIO, LLC,                                    )
                                                    )
          Plaintiffs,                               )
                                                    )
                                                    )          Civil Action No. 21-CV-12029-AK
v.                                                  )
                                                    )
SALUSAUDIO.COM,                                     )
                                                    )
          Defendant.                                )
_____)

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiffs Sound United, LLC ("Sound United"), and Polk Audio, LLC ("Polk Audio"), design, manufacture, and sell a variety of home theater and audiovisual products under numerous trademarks registered with the United States Patent and Trademark Office.  The plaintiffs allege the defendant, SalusAudio.com ("SalusAudio"), is an unauthorized reseller of the plaintiffs' products and has violated several of their trademarks.  In particular, the plaintiffs claim that SalusAudio sells non-genuine Sound United products that (1) bear the plaintiffs' registered trademarks; (2) are misrepresented as new; (3) have had serial numbers removed; and (4) falsely suggest that a manufacturer warranty applies.  The plaintiffs obtained an entry of default after SalusAudio failed to respond to the complaint or otherwise defend this action and have moved for default judgment.  [See Dkts. 9, 11].  For the following reasons, the plaintiffs' motion for default judgment [Dkt. 11] is **GRANTED**.

## I.     Factual and Procedural Background

Unless otherwise noted, the facts are recited as alleged in the plaintiffs' complaint.  [See Dkt. 1 ("Complaint")].  The plaintiffs design, manufacture, and sell a variety of home theater and audiovisual products under the Marantz, Denon, Polk, Definitive Technology, Heos, Classe, Boston Acoustics, and Bowers & Wilkins brands (collectively, the "Sound United Brands" and the products sold thereunder the "Sound United Products").  [Id. at ¶ 8].  The U.S. Patent and Trademark Office ("USPTO") has issued several registrations for the Sound United Brands, including Reg. No. 2,176,147, Reg. No. 3,533,922,[1] and Reg. No. 1,681,827 (collectively, the "Sound United Marks"), which have all been in use and in full force and effect since their registration.  [Id. at ¶¶ 10-12].  To ensure the quality control of the Sound United Marks, the plaintiffs have created and fostered a highly vetted network of authorized distributors and dealers of their products.  [Id. at ¶¶ 20-24].  These authorized resellers must enter into agreements with the plaintiffs, which include terms governing the resale of Sound United Products and prohibiting the authorized resellers from transferring any Sound United Products to any other unauthorized party.  [Id. at ¶¶ 21-22].  SalusAudio is not one of these authorized resellers.  [Id. at ¶ 19].  As a result of the plaintiffs' investment in advertising, promoting, and developing their authorized reseller network, they have established "substantial goodwill and widespread recognition" of the Sound United Marks.  [Id. at ¶¶ 16, 24].

Although not one of the plaintiffs' authorized resellers, SalusAudio has sold and is selling Sound United Products on several online retail platforms.  [Id. at ¶ 25].  SalusAudio advertises those products, which use the Sound United Marks, as "new," even though they are non-genuine, display fake serial numbers, and lack the corresponding Sound United Brands warranty

---

[1] Reg. No. 3,533,922 is Polk Audio's trademark.

protection (which is valid only if purchased directly from an authorized reseller).  [Id. at ¶¶ 15-30].  Moreover, the defendant sells Sound United Products bearing Polk Audio's trademark with the serial numbers removed and replaced with a non-genuine number.  [Id. at ¶ 34].  SalusAudio's promotion and sale of Sound United Products without authorization "creates the false impression that [SalusAudio] is among" the plaintiffs' authorized reseller network.  [Id. at ¶ 32].  Because SalusAudio is not one of the plaintiffs' authorized resellers, it is unable to offer the Sound United Brands warranty and adequately service customers as an authorized seller would, which renders the products SalusAudio sells "materially different" than those sold by the plaintiffs.  [Id. at ¶ 33].  SalusAudio's actions have substantially harmed plaintiff's goodwill and reputation when customers learn that the Sound United Products they have purchased are non-genuine and do not have the corresponding Sound United Brands warranty.  [Id. at ¶ 47].  Consequently, the defendant's actions dilute the plaintiff's trade name and goodwill and result in customer confusion.  [Id. at ¶ 48].

On December 13, 2021, the plaintiffs filed their complaint against SalusAudio, seeking injunctive and monetary relief.  The plaintiffs bring three claims against SalusAudio: (1) trademark counterfeiting and infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) deceptive trade practices pursuant to Massachusetts General Law ch. 93A.  Per the Court's December 30, 2021, order permitting alternate service [Dkt. 6], the plaintiffs served on the defendant true and accurate copies of the complaint and summons of this matter via email on January 4, 2022 [Dkt. 7].  As such, SalusAudio had until January 25, 2022, to answer or otherwise respond to the complaint.  SalusAudio failed to do so.  The plaintiffs requested entry of default on January 26, 2022.  [Dkt. 8].  On March 18, 2022, in

accordance with Federal Rule of Civil Procedure 55(a), the clerk entered default against SalusAudio for its failure to respond or otherwise defend this case.  [Dkt. 9].  On April 4, 2022, the plaintiffs moved for default judgement in accordance with the Court's standing order on motions for default judgment.  [Dkt. 11].

## II.    Legal Standard

Th Federal Rules of Civil Procedure provide a two-step process for default judgment. See Fed. R. Civ. P. 55.  First, the clerk must enter a notation of default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).   Second, upon obtaining a notation of default, the plaintiff must apply to the court for default judgment where the amount of damages is not a "sum certain."  See Fed. R. Civ. P. 55(b).  The party that has defaulted "is deemed to have admitted all of the allegations in the complaint."  CNE Direct, Inc. v. Blackberry Corp., 55 F. Supp. 3d 233, 234 (D. Mass. 2014); see SEC v. Tropikgadget FZE, 146 F. Supp. 3d 270, 275 (D. Mass. 2015) (noting that entry of default "constitutes an admission of all facts well-pleaded in the complaint" (citation omitted)).  However, the court independently "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action."  Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).  While the court may set a hearing to determine damages "when the amount is in dispute or is not ascertainable from the pleadings," the court may order default judgment without a hearing where "the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object."  In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002).

## III.   Discussion

The plaintiffs have satisfied the first step of the default judgment process.  [See Dkt. 9].
The Court therefore must evaluate whether the plaintiffs have shown that SalusAudio is liable for
trademark counterfeiting and infringement, unfair competition and false designation of origin,
and unfair and deceptive trade practices.  If the Court finds that the plaintiffs have made such a
showing, it must assess the plaintiffs' request for damages and injunctive relief.

### A.   Trademark Counterfeiting and Infringement (15 U.S.C. § 1114) and Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

The plaintiffs argue that the defendant violated the Lanham Act by counterfeiting and
infringing their trademarks (15 U.S.C. § 1114) and engaging in unfair competition and false
designation of origin (15 U.S.C. § 1125(a)), resulting in consumer confusion and impairing the
"trademark owner's goodwill."  See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982
F.2d 633, 636 (1st Cir. 1992).  The Lanham Act is "designed to reach, among other things,
attempts to appropriate the goodwill associated with a competitor's trademark by means of
confusingly similar marking and packaging, which would create the impression that the products
of the defendant originated with the plaintiff."  Purolator, Inc. v. EFRA Distribs., Inc., 687 F.2d
554, 561 (1st Cir. 1982).  To succeed on a claim for trademark counterfeiting and infringement, a
plaintiff must prove two elements: "(1) the trademarks are 'entitled to trademark protection,' and
(2) 'the allegedly infringing use is likely to cause consumer confusion.'"  Bose Corp. v. Ejaz,
732 F.3d 17, 26 (1st Cir. 2013) (quoting Bos. Duck Tours, LP v. Super Duck Tours, 531 F.3d 1,
12 (1st Cir. 2008)).  To demonstrate entitlement to trademark protection, the plaintiff need only
show prima facie evidence of the validity of the trademarks and their exclusive right to use the
products in commerce.  See 15 U.S.C. § 1057(b).  To prevail on a claim for unfair competition
and false designation of origin, the plaintiff must establish "(1) the ownership of a distinctive

mark entitled to trademark protection; (2) the use of that name in interstate commerce; and (3) its use by another in a manner likely to cause confusion as to the origin of the goods or services." Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc., 397 F. Supp. 2d 245, 257 (D. Mass. 2005) (citation omitted).  The "essential element" of both Lanham Act claims is that the "defendant's use of [the] plaintiff's mark be likely to cause confusion among customers as to the source of its product."  Mobil Oil Corp. v. Auto-Brite Car Wash, Inc., 615 F. Supp. 628, 631 (D. Mass. 1984); see Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 225 (D. Mass. 2010) (noting that "[l]ikelihood of confusion is an essential element of a trademark infringement claim under the Lanham Act" and the "same likelihood of confusion standard applies to the unfair competition and false designation of origin claims").

The plaintiffs' pleading, which the defaulting defendant is deemed to have admitted, shows that the plaintiffs are the owners of all rights, titles, and interests in and to the Sound United Marks [see Complaint at ¶¶ 10-19], and that those marks are valid and enforceable, see U.S. Patent & Trademark Office v. Booking.com B.V., 140 S. Ct. 2298, 2302 (2020) ("The owner of a mark on the principal register enjoys 'valuable benefits,' including a presumption that the mark is valid.'" (citation omitted)).  The plaintiffs further buttress their entitlement by explaining how they have spent millions of dollars to advertise and promote the Sound United Marks throughout the world.  [Id. at ¶ 16].  The Sound United Marks are therefore entitled to trademark protection.  The plaintiffs have also stated facts establishing that the trademarks have been used in interstate commerce.  [See id. at ¶¶ 2, 25, 55, 67, 69-71].  The question is whether the facts show that the defendant's use of the Sound United Marks is likely to cause consumer confusion.

Courts generally evaluate eight factors when examining whether a defendant's use of a plaintiff's trademark likely to cause consumer confusion: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark." Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). The First Circuit has explained that "when a manufacturer intentionally uses another's mark as a means of establishing a link in consumers' minds with the other's enterprise, and directly profits from that link, there is an unmistakable aura of deception.  Such a use is, *by its very nature*, 'likely to cause confusion, or to cause mistake, or to deceive.'"  See Bos. Athletic Ass'n v. Sullivan, 867 F.2d 22, 35 (1st Cir. 1989) (emphasis added) (citing 15 U.S.C. § 1114(1)).  Such is the case here on the facts alleged.  SalusAudio removes the serial numbers, replacing them with non-genuine serial numbers, on products bearing the Polk Audio trademark.  [Complaint at ¶ 34]. SalusAudio uses the Sound United Marks on products it sells online, advertising such products as "new," even though those products are "non-genuine, display fake serial numbers, and lack the corresponding Sound United Brands warranty protection" and "quality controls and customer service support."  [Id. at ¶¶ 28, 44].  SalusAudio has caused customer confusion by unlawfully selling non-genuine and warranty-less Sound United Products attributable to the plaintiffs.  The plaintiffs have faced the brunt of this confusion by having to explain to upset customers why the defendant's fraudulent products are not subject to Sound United's warranty program.  The defendant has profited from selling this marked merchandise without providing the benefits customers expect from genuine Sound United Products.  Based on the facts alleged, SalusAudio has violated the Lanham Act by counterfeiting and infringing the Sound United Marks, resulting

in customer confusion, see Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability."), and by engaging in unfair competition and false designation of origin, see N. Light Tech. v. N. Lights Club, 97 F. Supp. 2d 96, 120 (D. Mass. 2000) ("In this case, where the basic allegation is trademark infringement, the evaluation of the [p]laintiff's 15 U.S.C. § 1114(1) claim suffices to establish likelihood of success on this [15 U.S.C. § 1125(a), unfair competition and false designation] claim."); see also Societe des Produits Nestle, 982 F.2d at 640 ("Whether the fulcrum of plaintiffs' complaint is perceived as section 32(1)(a), section 42, or section 43(a) [of the Lanham Act], liability necessarily turns on the existence *vel non* of material differences between the products of a sort likely to create consumer confusion.").

**B.     Chapter 93A**

Chapter 93A provides relief to "any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice." Mass. Gen. Laws ch. 93A, § 11.  The plaintiffs and the defendant are engaged in "trade or commerce," and the Court's analysis of the defendant's actions under the Lanham Act applies with equal force to this claim.  That is, "[a]s with § 43(a) of the Lanham Act, the essential element of the action under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 11, is that defendant's use of a mark caused confusion among customers as to the source of the plaintiff's product."  N. Light Tech., 97 F. Supp. 2d at 120 (citing R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 879 (D. Mass. 1988)).  For the same reasons explained above, the plaintiffs have established that the defendant's actions were unfair or deceptive in violation of

the Massachusetts Consumer Protection Act.  See Mobil Oil Corp., 615 F. Supp. at 631 (finding

that the defendant violated 15 U.S.C. §§ 1114, 1125(a) and Mass. Gen. Laws ch. 93A where the

defendant's "conduct constitutes unfair competition as defined in case law").

### C.   Damages

The plaintiffs request $2,000,000 in statutory damages and seek to enjoin the defendant

from selling Sound United Products in the future.  [Dkt. 11 at 16, 18].  They do not seek attorney

fees and costs.  [Id. at 18 n.8].

### 1.   Statutory Damages

Under the Lanham Act, a trademark owner may recover statutory damages in lieu of

actual damages.  15 U.S.C.  § 1117(c).  The Court may award statutory damages between $1,000

and $200,000 "per counterfeit mark per type of goods . . . sold . . . as the court considers just" or

up to $2,000,000 per counterfeit mark per type of good if the Court finds the use of the mark to

have been willful.[2]  Id.  Statutory damages may be particularly appropriate in cases of default,

given the lack of information regarding the defendant's sales and profits.  Coach, Inc. v.

Melendez, No. 10-cv-06178-BSJ-HBP, 2011 WL 4542971, at *7 (S.D.N.Y. Sept. 2, 2011).  The

Lanham Act provides "no guidance as to the determination of statutory damages, leaving the

matter to the Court's discretion."  CrossFit, Inc. v. Mustapha, 162 F. Supp. 3d 46, 52 (D. Mass.

2016).  A district court is "only limited by what the court considers just."  Id. (citing Gucci Am.,

Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004)).  The Court may

consider compensation for the plaintiffs, as well as deterrence and punishment for the defendant.

Id.

---

[2] A counterfeit mark includes "a counterfeit of a mark that is registered on the principal register in the United States
Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use,
whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C.
§ 1116(d)(1)(B)(i).

Because the defendant has not responded to the plaintiffs' complaint, neither the plaintiffs nor the Court can accurately assess lost profits or damage to consumer good will.  As such, statutory damages are an appropriate remedy.  See Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999).  The plaintiffs have requested a $2,000,000 judgment, the maximum per counterfeit mark award for willful violations, which they believe "will serve the goals of compensat[ion]" and will deter the defendant's future conduct and others from similar misconduct.  [Dkt. 11 at 18].   Courts have considered several factors when determining the appropriate sum to award as statutory damages, including

> (1) the expenses saved and profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on infringers other than the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether the defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for deterring the defendant.

CrossFit, Inc., 162 F. Supp. 3d at 52.  In this case, where the parties have not engaged in discovery and there is little or no evidence of expenses saved, profits reaped, the value of the Sound United Marks, and revenues lost, the final four factors weigh heaviest on the Court's decision-making.  Although the plaintiffs cannot estimate their lost revenue or the defendant's financial gains from their wrongful conduct, the Court finds, based on the facts alleged, that the defendant's violations of the Sound United Marks have led to at least some lost sales and damage to the plaintiffs' consumer good will.  Moreover, the removal of original serial numbers and replacement with non-genuine serial numbers demonstrates that the defendant's violations were willful.  [See Complaint at ¶ 34].   The defendant's default bolsters this finding.  See Joe Hand Promotions, Inc. v. Salinetti, 148 F. Supp. 2d 119, 122 (D. Mass. 2001) (noting that "the court intended to recommend a finding of liability, including a finding that [the] [d]efendants acted willfully" because "[a]fter all, that is the nature of the default"); see also Time Warner Cable v.

Olmo, 977 F. Supp. 585, 589 (E.D.N.Y. 1997) ("[T]he court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.").  The Court finds that a damages award of $1,000,000 is just considering the willful nature of the defendant's infringement, the violation of the three Sound United Marks specifically named in the plaintiffs' complaint, and the need to deter the defendant in this case and others.  See Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 Fed. Appx. 19, 22 (2d Cir. 2012) (noting that courts have "broad discretion" to balance the "punitive, deterrent function" of a statutory damages award with whether the award would "constitute a windfall for prevailing plaintiffs").

### 2.    Injunctive Relief

Under the Lanham Act, a court may permanently enjoin a party found liable for trademark infringement when the "principles of equity" warrant such action.  See 15 U.S.C. § 1116(a).  Generally, a court may grant an injunction after weighing four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm in the absence of an injunction; (3) whether the plaintiff's injury outweighs any harm the grant of an injunction would impose on the defendant; and (4) whether an injunction will adversely affect the public interest.  Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1994).  In trademark infringement cases, the "key issue is the likelihood of success on the merits because the other decisions will flow from that ruling."  Boustany v. Bos. Dental Group, Inc., 42 F. Supp. 2d 100, 104 (D. Mass. 1999) (citing Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989)).  As such, the Court may grant injunctive relief in trademark cases upon a showing that the defendant's actions "are likely to cause confusion," and such relief is "necessary" where the defendant's use of the plaintiff's mark "constitutes

irreparable harm to the [c]ompany not compensable by money damages." R.J. Toomey Co., 683 F. Supp. at 879 (citations omitted). "[I]rreparable harm flows from an unlawful trademark infringement as a matter of law," as "the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." Societe des Produits Nestle, 982 F.2d at 640. For the reasons previously discussed, the plaintiffs have demonstrated they are likely to succeed on the merits of their claims, and irreparable harm is presumed. Moreover, the harm to the plaintiffs outweighs any harm the defendant might suffer from the imposition of an injunction, and granting an injunction here serves the public interest. See Boustany, 42 F. Supp. 2d at 113 (noting that "the public interest almost always favors the granting" of appropriate injunctions in trademark cases and the "relevant consideration is the consumers' interest in not being deceived or confused about the products they purchase"). The defendant's actions have caused irreparable harm to the plaintiffs, and the equitable relief sought is justified under the circumstances.

IV.     **Conclusion**

For the foregoing reasons, the plaintiffs' motion for default judgment [Dkt. 11] is **GRANTED**.

Statutory damages are awarded against the defendant and in favor of the plaintiffs in the amount of $1,000,000 pursuant to the Lanham Act for infringement of the plaintiffs' trademarks identified by Reg. No. 2,176,147, Reg. No. 3,533,922, and Reg. No. 1,681,827 (the "Sound United Marks") at the United States Patent and Trademark Office.

The defendant, its officers, officers, agents, servants, employees, and any persons or entities acting in concert or participation with the defendant, including, but not limited to, any online platform utilized by defendant, such as Amazon.com, or any website, website host,

website administrator, domain registrar, or internet service provider, is hereby **ENJOINED**

from: (1) using the Sound United Marks or any other of the plaintiffs' intellectual property; (b)

acquiring, or taking any steps to acquire, any Sound United Products; (c) selling, or taking any

steps to sell, any Sound United Products; (d) engaging in any activity constituting unfair

competition with the plaintiffs; and (5) inducing, assisting, or abetting any other person or entity

in engaging in or performing any of the business activities described in the paragraphs above.

   **SO ORDERED.**

Dated: October 25, 2022        /s/ Angel Kelley
             Hon. Angel Kelley
             United States District Judge